Argued and submitted August 4, 2015, affirmed January 27, petition for review denied May 5, 2016 (359 Or 525)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRISTOBAL ARTURO MORENO,
*Defendant-Appellant.*

Marion County Circuit Court
13C47022; A157965

366 P3d 839

Jason E. Thompson argued the cause for appellant. With him on the brief was Ferder Casebeer French & Thompson LLP.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Nakamoto, Judge pro tempore.

TOOKEY, J.

**TOOKEY, J.**

Following a jury trial, defendant was found not guilty of two counts of rape in the first degree (Counts 1 and 2), ORS 163.375, and convicted of one count of sexual abuse in the first degree (Count 3), ORS 163.427. On appeal, defendant raises two assignments of error. We write only to address defendant's contention that the trial court erred in denying his motion for a judgment of acquittal on the count of sexual abuse in the first degree and reject defendant's other assignment of error—that the trial court erred in not instructing the jury that the guilty verdict must be unanimous—without further discussion. *See State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, 558 US 815 (2009). Defendant asserts that the state failed to produce legally sufficient evidence corroborating defendant's confession on the count of sexual abuse in the first degree.[1] As explained below, we conclude that there was sufficient corroboration of defendant's confession and that the trial court did not err in denying defendant's motion for judgment of acquittal. Accordingly, we affirm.

The pertinent facts are as follows. The victim testified that she went out to a dance club with a friend and two other acquaintances to have some drinks and dance for a few hours. The next thing the victim remembers is waking up the following morning in a strange house with defendant, whom she recognized as her cousin's boyfriend, on top of her, holding her down by the shoulders. The victim also testified that she believed he was having sex with her because she felt something inside her vagina. As the victim began to struggle to try and get up, defendant continued to attempt to have sex with her and put a blanket over her face. However, defendant was not holding down the blanket with his hands and it repeatedly came off as he continued to try to insert his penis into her vagina. After defendant finished, he got up and left, leaving the front door open.

---

[1] ORS 136.425(2) provides, "Except as provided in ORS 136.427, a confession alone is not sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed."

The victim testified that she then put her underwear and pants on, unsuccessfully attempted to wake a couple sleeping in the house, ran out of the open front door, and began walking towards her sister's house. After arriving at her sister's house, the victim told her sister that she had been raped by defendant and her sister immediately took her to the hospital. At the hospital, the victim met with Dr. Kenoyer, Nurse Baker, and Deputy Thompson. During the victim's interview with Baker and Thompson, she identified defendant as the person who had raped her.

Kenoyer and Baker performed a medical examination and they both testified that they observed a scratch on the victim's thigh and bruising on her legs. Pictures were taken of these injuries and admitted into evidence. The victim also testified that she noticed the scratch on her thigh that morning and some additional bruising on her inner thighs a couple of days later. During the exam, Kenoyer and Baker also obtained oral, cervical, and vaginal swabs for forensic examination. The victim testified that she did not have consensual sex with anyone that night. However, the forensic investigators found semen in the samples collected from the oral, cervical, and vaginal swabs of the victim. Forensic analysis of those samples revealed that one individual, other than defendant, contributed DNA to the evidence collected from the oral and cervical swabs. Additionally, forensic analysis revealed that three individuals contributed to the evidence collected from the vaginal swabs, and that one of those contributors left a low level of DNA that could not be used to either include or exclude defendant as the contributor.

Thompson testified that after he left the hospital, he made contact with defendant by telephone and defendant refused to do an interview at the police department, but agreed to meet him in a Walgreens parking lot. During that conversation, defendant admitted to drinking at the dance club, leaving in the same car as the victim, and drinking until the early morning with two unknown males at the residence where the victim was on the couch. However, defendant repeatedly denied having any sexual contact with the victim and said that he did not observe any of the other

males in the home touch her either. Before the conversation with Thompson ended, defendant agreed to an interview at a detective's office on a later date.

During the second interview, with Detective Meyers, defendant also admitted to being at the dance club, leaving in the same car as the victim, and drinking with two unknown males at the residence where the victim was on the couch. Additionally, defendant continued to deny that he had any sexual contact with the victim. Eventually, defendant did admit that he had "reached up her shorts or skirt *** and then touched her on her vagina." At that point Meyers turned on recording equipment to record the confession. During the recorded portion of the interview defendant confessed to touching the victim's vagina. Defendant was indicted on two counts of first-degree rape (Counts 1 and 2), ORS 163.375, and one count of first-degree sexual abuse (Count 3), ORS 163.427.

At trial, the state's evidence included (1) defendant's recorded confession that he had touched the victim's vagina; (2) the testimony of the victim, Kenoyer, Baker, Thompson, and Meyers; and (3) the physical evidence discussed above. After the state's final witness testified, defendant moved for a judgment of acquittal, arguing that the state's elected theory of the case was that defendant had touched the victim's vagina with his hand and that "[t]here's no evidence whatsoever that's been admitted into this trial that would corroborate the confession" of defendant that he had touched the victim's vagina with his hand. The state responded:

> "This is a case where, of course, there is some evidence, some physical evidence, that something occurred. This court has before it the testimony of the victim herself, who says that there was bruising on the insides of her thighs[.]
>
> "* * * * *
>
> "*** [S]he testified that when she woke up, his penis was inside her, he was holding her down, and at some point he was putting it back inside her.
>
> "So that would involve at least an incidental touching with his hand[.]"

The trial court agreed with the state that there was sufficient corroboration, based on the evidence before the court, and denied defendant's motion for judgment of acquittal. Ultimately, the jury found defendant not guilty of the two counts of first-degree rape (Counts 1 and 2), and guilty of the one count of first-degree sexual abuse (Count 3).

On appeal, defendant essentially reprises the arguments he advanced to the trial court—that the state failed to present any evidence to corroborate his confession to sexual abuse as required by ORS 136.425(2). Specifically, defendant contends that the evidence would not give "rise to an inference that defendant subjected the victim to the isolated, specific act of 'sexual abuse' by touching her genitals with his hand." That is, defendant argues that the state failed to prove its specific election with evidence other than defendant's confession. The state responds that "the state's election has no bearing on the common-law *corpus delicti* rule, which is concerned with the general harm or injury underlying the crime at issue." Thus, the state contends that "the jury here was entitled to infer that defendant touched his victim's genitals when initiating sexual intercourse with her" because the record provides sufficient corroboration of that act. Furthermore, the state argues that, "even if defendant is correct that the state was required to corroborate the specific act of touching the victim's genitals with his hand, the record here provides sufficient corroboration of that act as well."

Defendant also argues that, "because [the victim] maintained that she awoke to defendant raping her—acts which the jury found defendant not guilty of committing—that testimony * * * does not corroborate 'sexual abuse.'" The state responds that "the jury's verdict * * * has no bearing on the proper outcome of a motion for judgment of acquittal, which must be decided before the jury issues any verdict."

As to the latter dispute, we agree with the state; the jury verdict does not affect our consideration of a motion for judgment of acquittal and the sufficiency of the evidence corroborating the confession. A jury could conclude that the evidence is insufficient to convict defendant of the charged crimes of rape; however, as relevant here, and noted below, if

the confession of sexual abuse is corroborated under the *corpus delicti* standard, then the confession and the other evidence would be evaluated under the standard for a motion for judgment of acquittal before the charged crimes go to the jury. Additionally, a trial court cannot grant a motion for judgment of acquittal after the return of a jury verdict; the correct procedural device for challenging sufficiency of evidence after the verdict is a motion for a new trial. *State v. Metcalfe*, 328 Or 309, 313-14, 974 P2d 1189 (1999) (rejecting defendant's argument that he should be allowed "to move for a judgment of acquittal after a jury verdict if, in hindsight, the evidence did not support the verdict"). Thus, the jury's verdict has no bearing on a trial court's or our analysis of a motion for judgment of acquittal, and we now turn to the proper standard for evaluating whether the state has produced legally sufficient evidence to corroborate defendant's confession.

"We review a trial court's denial of a motion for a judgment of acquittal to determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Simons*, 214 Or App 675, 677, 167 P3d 476 (2007), *rev den*, 344 Or 43 (2008) (citing *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994)). "Only if a defendant's confession is supported by legally sufficient corroborating evidence may both the confession and the independent corroborating evidence be considered in determining whether that standard has been met." *Id.* (citing ORS 136.425(1); *State v. Lerch*, 296 Or 377, 398-99, 677 P2d 678 (1984)). The Supreme Court has explained that "ORS 136.425(1) codified the common-law '*corpus delicti* rule.'" *State v. Chatelain*, 347 Or 278, 283, 220 P3d 41 (2009).[2] ORS 136.425(2) provides, in part, that

---

[2] At that time, ORS 136.425(1) provided, in part, "A confession or admission of a defendant * * * cannot be given into evidence against the defendant when it was made under the influence of fear produced by threats; nor is a confession only sufficient to warrant the conviction of the defendant without *some other proof* that the crime has been committed." (Emphasis added.) As noted above, the current version of ORS 136.425(2) provides, "Except as provided in ORS 136.427, a confession alone is not sufficient to warrant the conviction of the defendant without *some other proof* that the crime has been committed." (Emphasis added.) The amendments to ORS 136.425 made by the 2009 Legislative Assembly provide for an exception in which a confession alone will sometimes be sufficient to warrant

"a confession alone is not sufficient to warrant the conviction of the defendant without *some other proof* that the crime has been committed." (Emphasis added.) In *Lerch*, the Supreme Court held that "'some proof' means that there is enough evidence from which the jury may draw an inference that tends to establish or prove that a crime has been committed." 296 Or at 398. Thus, the threshold for corroboration is low; it does not require "substantial evidence," "clear and convincing evidence," or proof "beyond a reasonable doubt." *Id.* at 397. The *corpus delicti* rule requires us to determine whether, absent defendant's confession, there was legally sufficient corroborating evidence from which the jury could "draw an inference that tends to prove" that (1) "the injury or harm specified in the crime occurred" and (2) that "this injury or harm was caused by someone's criminal activity." *Id.* at 393-94, 398 (citing *McCormick on Evidence* § 158, 346-47 (2d ed 1972) ("It is not necessary that the independent proof tend to connect the defendant with the crime.")).

"The *corpus delicti* of the first-degree sexual abuse charge is that the alleged victim was subjected to sexual contact." *State v. Delp*, 218 Or App 17, 29, 178 P3d 259, *rev den*, 345 Or 317 (2008) (citing ORS 163.427). Sexual contact is defined as "any touching of the sexual or other intimate parts of a person * * * for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6). Specifically, in this case, the proscribed harm or injury, with respect to the charged offense, was being subjected to the specific sexual contact described in the indictment—that someone subjected the victim "to sexual contact by touching her genitals." *See Simons*, 214 Or App at 686 ("[T]he proscribed harm or injury, with respect to each charged offense, was being subjected to the specific sexual contact described in the indictment for that offense."); *Delp*, 218 Or App at 29 (same). However, the state made a specific election in this case with respect to the specific sexual

the conviction of a defendant "without some other proof that the crime has been committed." *See* Or Laws 2009, ch 875, § 1. That exception does not affect our analysis in this case. Thus, our cases, and the cases of the Oregon Supreme Court, that interpreted the language "some other proof" in the prior version of ORS 136.425(1) remain as binding precedent as we apply the current version of ORS 136.425(2) in this case.

contact when defendant moved for judgment of acquittal—that defendant had committed first-degree sexual abuse by touching the victim's vagina with his hand—and, therefore, we refer to that specific sexual contact with the victim rather than sexual contact generally. *Chatelain*, 347 Or at 288 n 5 (The Supreme Court analyzed the *corpus delicti* of the burglary charge under the specific election made by the state that the defendant intended to distribute marijuana, rather than controlled substances generally, as alleged in the indictment.). Thus, in this case we consider whether, absent defendant's confession, the state submitted enough evidence from which the jury could draw an inference that tends to show that someone subjected the victim to sexual contact by touching her vagina with that person's hand.

"There is a difference between inferences that may be drawn from circumstantial evidence and mere speculation[;] *** [r]easonable inferences are permissible; speculation and guesswork are not." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) (internal citations omitted). "[T]he line between a reasonable inference *** and an impermissible speculation *** is drawn by the laws of logic." *Id.* (citations omitted). "[W]e have held evidence insufficient to support an inference when the conclusion to be drawn from it requires 'too great an inferential leap'—that is, when the logic is too strained." *Id.* at 468 (quoting *State v. Lopez-Medina*, 143 Or App 195, 201, 923 P2d 1240 (1996)). "Likewise, evidence is insufficient if it requires the stacking of inferences to the point of speculation." *Id.* (citations omitted). Because "the line between permissible inferences and impermissible speculation is 'sometimes faint'" a review of our cases involving the sufficiency of evidence to corroborate a confession is helpful for this analysis. *Id.* at 467 (citations omitted).

In *State v. Campbell*, 218 Or App 171, 178 P3d 337 (2008), *Simons*, 214 Or App 675, and *Delp*, 218 Or App 17, we concluded that "the state had failed to adduce sufficient corroborating evidence going to the first prong of the *corpus delicti*, that the specified harm or injury in each offense actually occurred." *State v. Ofodrinwa*, 241 Or App 214, 223, 250 P3d 405 (2011), *aff'd*, 353 Or 507, 300 P3d 154 (2013) (summarizing cases). In *Campbell*, the defendant confessed

to an officer that he took a two or three-year-old girl out of the bath at a friend's house and "touched her vagina with his bare hands" and "inserted his finger into [her] vagina." 218 Or App at 174. We concluded that other evidence showing that the defendant had an opportunity to commit the abuse, that he had some improper purpose, and that he had guilty knowledge did not tend to establish that the offenses had occurred. *Id.* at 177-78. In *Simons*, the defendant was a nursing assistant in a residential and special care unit of a hospital that housed individuals with Alzheimer's disease and confessed to sexual crimes against elderly patients. 214 Or App at 677-79. We concluded that the other evidence that the defendant had engaged in sexually aggressive misconduct towards coworkers, had a professed interest in older women, had unsupervised access to patients, and that the demeanor of one patient had changed, did not tend to show that the patients were victims of the harm specified in the charged offenses. *Id.* at 687-88. In *Delp*, the defendant confessed that he had committed sexual crimes against his girlfriend's one-year-old daughter multiple times, and that on the most recent occasion he had ejaculated into a pink towel. 218 Or App at 20. We concluded that "no reasonable juror could infer from [the] defendant's possession of child pornography, his sexual interest in children, the existence of a recently laundered pink towel, and [the] defendant's opportunity to commit the crimes, that the child was the victim of sodomy or sexual abuse[.]" *Id.* at 29. The common thread in these cases is that the state failed to present any physical evidence, victim testimony, or witness testimony, other than the defendant's confession, that would tend to prove the alleged harm occurred.[3]

Conversely, in *Ofodrinwa*, 241 Or App 214, and *State v. Hernandez*, 256 Or App 363, 300 P3d 261, *rev den*, 353 Or 868 (2013), the state adduced sufficient corroborating evidence that the specified harm or injury in each offense actually occurred. In *Ofodrinwa*, the defendant confessed to

---

[3] In *Delp*, we recognized that "[t]he *corpus delicti* rule, as demonstrated in *Simons* and this case, can make it more difficult to obtain convictions based on confessions of crimes against particularly vulnerable victims." 218 Or App at 29 n 10. Notably, in *Campbell*, *Delp*, and *Simons*, there was no victim testimony.

having sexual intercourse with his underage girlfriend, and that the condom wrapper the police had found in his pocket had contained the condom that he had used while having sex with her that morning. 241 Or App at 217. We stated that, "[u]nlike the evidence at issue in *Campbell*, *Delp*, and *Simons*, here, the physical evidence—an empty condom wrapper found on [the] defendant—*is* specifically indicative of the act of sexual intercourse, the physical act underlying the second-degree sexual abuse charge." *Id.* at 224 (emphasis in original). We then noted that the defendant "was actively involved in an ongoing, physically demonstrative, relationship" with the victim and then concluded that, "as a matter of law and common sense, the combination of the condom wrapper on defendant's person and the nature and duration of [the] defendant's relationship with [the victim] provided legally sufficient corroboration of [the] defendant's confession." *Id.* at 224-25. In *Hernandez*, the defendant confessed to having a five-year-old girl "'grind' her vaginal and anal area on his groin." 256 Or App at 365. We concluded that the evidence of the victim's disclosures that the defendant, on several occasions, had sexual contact with the victim and that the defendant gave her "owies where the pee comes out," was sufficient for a jury to infer that the "owies" that the victim described referred to defendant having her "grind" her vaginal and anal area on his groin. *Id.* at 367. Thus, in *Ofodrinwa* and *Hernandez* the state presented physical evidence or victim and witness testimony, other than the defendant's confession, from which the jury could draw an inference that would tend to prove the alleged harm occurred.

This case is unlike *Campbell*, *Simons*, and *Delp*, in which the state failed to present any testimony from the victim or physical evidence and where the evidence presented tended to show only an opportunity to commit the abuse, an unspecified improper purpose, or guilty knowledge. Although Thompson and Meyers testified that defendant admitted to being at the dance club, leaving in the same car as the victim, and drinking with two unknown males at the residence where the victim was on the couch, the state also presented physical evidence, and victim and witness testimony, other than the defendant's confession, from which a

jury could draw an inference that would tend to prove the alleged harm occurred.

Like the evidence in *Ofodrinwa* and *Hernandez*, the evidence in this case includes physical evidence and victim and witness testimony from which the jury could draw an inference that tends to prove that someone subjected the victim to sexual contact by touching her vagina with their hand. The victim testified that she noticed a scratch on her thigh that morning and some additional bruising on her inner thighs a couple of days later. Kenoyer and Baker both testified that they observed a scratch on the victim's thigh and bruising on her legs during the medical examination. Furthermore, pictures were taken of the injuries observed during the medical exam and were admitted into evidence. That evidence tends to show that someone was touching the victim's inner thighs and groin area in an aggressive and violent manner, and a jury could reasonably infer from that evidence that someone had touched her vagina with their hand when leaving the bruises and scratches on her thighs. Thus, there was legally sufficient evidence to corroborate defendant's confession.

We are left to determine whether "a rational trier of fact could have found the essential elements of [first-degree sexual abuse] proved beyond a reasonable doubt." *Simons*, 214 Or App at 677. In this case, to establish the elements of the crime of sexual abuse in the first degree, the state had to prove beyond a reasonable doubt that defendant "knowingly subjected [the victim] to sexual contact" and that the victim "was incapable of consent by reason of being physically helpless." *See State v. Guckert*, 260 Or App 50, 54, 316 P3d 373 (2013), *rev den*, 354 Or 840 (2014); *State v. Marker*, 263 Or App 669, 674, 329 P3d 781 (2014) (concluding that "a person who is asleep is 'physically helpless' as defined by ORS 163.305(5)"). In addition to defendant's confession and the corroborating evidence discussed above, the victim testified that (1) she woke up in a strange home to defendant holding her down and believed that she felt something in her vagina; (2) when she began to struggle defendant threw a blanket over her face; and (3) defendant was not holding down the blanket with his hands and it repeatedly came off as he continued to try to insert his penis in her vagina.

Additionally, DNA analysis also revealed that three individuals contributed to the vaginal swabs, and that one of those contributors left a low level of DNA that could not be used to either include or exclude defendant as the contributor. It is within the purview of a trier of fact to infer from that evidence, as well as the fact that defendant had been drinking until the early morning, that defendant knowingly touched the victim's vagina with his hand while she was asleep.

In sum, from defendant's corroborated confession, the testimony of the victim, Kenoyer, Baker, Thompson, and Meyers, as well as the physical evidence discussed above, a jury could have found the essential elements of first-degree sexual abuse proved beyond a reasonable doubt. Therefore, the trial court did not err when it denied defendant's motion for judgment of acquittal.

Affirmed.